IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

BRANDON SMITH,                          )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )            No. 10-2059-STA-tmp
                                        )
SHELBY COUNTY, TENNESSEE,               )
MARK LUTTRELL, in his official and      )
individual capacity, G. BEANS, in his   )
official and individual capacity, and   )
J. STURGEON, in his official and        )
individual capacity,                    )
                                        )
            Defendants.                 )

_____

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR IN THE
ALTERNATIVE FOR SUMMARY JUDGMENT
_____

Before the Court is Defendants' Motion to Dismiss or in the alternative for Summary

Judgment (D.E. # 4) filed on February 12, 2010.  Plaintiff has responded in opposition to

Defendants' Motion.  For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff's Complaint contains the following allegations: on or about December 20, 2008,

Plaintiff Brandon Smith was experiencing a seizure at his residence.  (Compl. ¶ 6).  A family

member of the Plaintiff called 911 for ambulance assistance.  (*Id.*).  Deputies G. Beans and J.

Sturgeon while in the course and scope of their employment with Shelby County, Tennessee and

in their individual and official capacity negligently and with deliberate indifference to the clearly

established constitutional rights of Plaintiff proceeded to beat him without provocation and

1

utilize other force upon him while he was in the process of a seizure.  (*Id.*).  Deputy Beans and Deputy Sturgeon's conduct was objectively unreasonable under the color of state law and a proximate cause of his injuries and damages.  (*Id.*).  Plaintiff's family had initiated the 911 call for medical assistance.  (*Id.*)  Deputies Beans and Sturgeon also assaulted Plaintiff and proximately caused his injuries and damages.  (*Id.*).

Plaintiff has also alleged that Defendant Shelby County is liable for the deprivation of his rights because Shelby County failed to properly train, supervise, discipline, retain or hire the deputies and that failure was the moving force behind Plaintiff's injuries.  Similarly, Plaintiff has named Sheriff Mark Luttrell ("Sheriff Luttrell") as a defendant for his failure to train, supervise, hire or retain the deputies pursuant to § 1983.  Plaintiff has further alleged that Defendants Shelby County and Sheriff Luttrell were negligent in supervising and training the deputies pursuant to the Tennessee Governmental Tort Liability Act ("GTLA").

In their Motion, Defendants argue that the Court should dismiss all of Plaintiff's claims or in the alternative grant Defendants summary judgment on all claims.  Defendants have attached for support evidence in support of their Motion including the hiring and training procedures Shelby County utilizes in selecting sheriffs deputies; the training records of Deputy Beans and Deputy Sturgeon; the Use of Force form the deputies completed documenting their arrest of Plaintiff; a recording of the 911 call placed from Plaintiff's residence; and affidavits of Deputy Beans and Deputy Sturgeon.

As for each of Plaintiff's claims, Defendants first argue that claims against Sheriff Luttrell in his official capacity are actually claims against Shelby County.  As a result, the Court should dismiss those claims.  Plaintiff's Complaint does not contain any claim against Sheriff

Luttrell in his individual capacity.

Second, Defendants argue that the deputies are entitled to qualified immunity because the record shows that their actions were objectively reasonable under the circumstances. Defendants contend that there was a history of reports of domestic violence at Plaintiff's residence. The 911 dispatcher informed the deputies of this fact. The initial 911 call was placed by a woman, but the call was disconnected before the dispatcher could obtain information from her. The dispatcher's subsequent call was also disrupted. When the deputies arrived, they found Plaintiff bleeding from the head and holding a pregnant woman in a headlock. Plaintiff resisted the deputies and assaulted them with items in the house. The deputies acted to subdue Plaintiff for his own safety and for the safety of others in the house. Based on these facts, Defendants argue that the deputies have established the objective reasonableness of their actions and so are entitled to qualified immunity.

Third, Defendants assert that Plaintiff cannot prevail on any claim against Shelby County. Shelby County argues that the claims against the deputies should be dismissed and by extension any claim against the County for failure to train the deputies should also be dismissed. Plaintiff's § 1983 allegations against Shelby County are conclusory and fail to state a claim under Rule 12(b). Plaintiff also cannot recover from Shelby County on the basis of *respondeat superior*. Shelby County contends that it has training policies in place to assure proper screening and hiring. Fourth, Defendants argue that mere negligence cannot form the basis of a § 1983 claim.

Nor can Plaintiff recover punitive damages from Shelby County.

As for Plaintiff's state law claims, Defendants state that Shelby County is immune from

suit pursuant to the GTLA for the intentional acts of its employees as well as for alleged civil rights violations.  As for Plaintiff's claim for negligence, Defendants argue that Plaintiff was bleeding heavily when deputies responded to the 911 call.  Therefore, Plaintiff cannot show that the deputies actions were the proximate cause of his injuries.  Plaintiff's claim for assault and battery should also be dismissed because the deputies used only the amount of force necessary to effectuate the arrest.  Finally, Defendants contend that the deputies are entitled to general immunity under Tennessee law.

Plaintiff has responded in opposition to Defendants' Motion offering his own version of events from the night of his arrest.  According to Plaintiff, Aisha Swatt ("Swatt") placed the 911 call for medical assistance because Plaintiff was experiencing a seizure.  Plaintiff was lying on the bathroom floor.  After Swatt moved him to the bed, the deputies knocked on the door and announced their presence.  Swatt allowed the deputies to enter; however, Plaintiff states that he was afraid of the deputies.  The deputies "jumped over Swatt" and chased Plaintiff around the bedroom.  Swatt told the deputies that Plaintiff "did not know who he was."  Once the deputies ordered Swatt out of the room, she heard the sound of someone being hit with a baton.  Plaintiff states that his records from the Med reported that Plaintiff was struck in the head with a nightstick.  Plaintiff also alleges that after he was handcuffed, one of the deputies rammed his head into the wall.  The deputies admit to using a chemical agent in Plaintiff's eyes.

Plaintiff argues that Sheriff Luttrell promulgated the department's use of force policy.  With respect to training, each deputy received only two hours training in dealing with mental illness.  Plaintiff contends that the County was also on notice that Deputy Sturgeon posed a risk of using excessive force due to a previous incident.  Plaintiff's right to be free from baton strikes

when he was not resisting or in a state of seizure was clearly established as was his right to be free from chemical agents, having his head rammed into the wall, or having a knee placed into his back while being handcuffed.  Plaintiff next contends that Shelby County is not entitled to immunity because the deputies conduct deviated from the County's use of force policy.  From the well-plead allegations of his Complaint and the record before the Court, Plaintiff argues that Defendants cannot show that his claims should be dismissed.

## **STANDARD OF REVIEW**

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[1] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[2]  "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[3]  "The Federal Rules of Civil Procedure do not require a claimant to set out in detail all the facts upon which he bases his claim."[4]

The Supreme Court has more recently stated that the Federal Rules "do not require a heightened fact pleading of specifics, but only enough facts to state a claim that is plausible on

---

[1] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[2] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[3] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 889, 902 (6th Cir. 2003).

[4] *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

its face."[5]  The Sixth Circuit has subsequently acknowledged "[s]ignificant uncertainty" as to the

intended scope of *Twombly*.[6]  Consequently, the Sixth Circuit has articulated the following as the

standard of review for 12(b)(6) motions: on a motion to dismiss, the Court must construe the

complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and

determine whether the complaint contains "enough facts to state a claim to relief that is plausible

on its face."[7]  Thus, although the factual allegations in a complaint need not be detailed, they

"must do more than create speculation or suspicion of a legally cognizable cause of action; they

must show entitlement to relief."[8]

        In the alternative, Defendants have also sought summary judgment pursuant to Rule 56.

Federal Rule of Civil Procedure 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any, show that
> there is no genuine issue as to any material fact and that the moving party is entitled
> to a judgment as a matter of law.[9]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most

---

[5] *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) ("retiring" the "no set of facts" standard first announced in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

[6] *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 337 (6th Cir. 2007) ("We have noted some uncertainty concerning the scope of *Bell Atlantic Corp. v. Twombly*, ... in which the Supreme Court 'retired' the 'no set of facts' formulation of the Rule 12(b)(6) standard ....").

[7] *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1974 (2007)).

[8] *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1964-65).

[9] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

favorable to the nonmoving party.[10]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[11]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[12]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[13]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[14]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[15]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[16]  Finally, the "judge may not make credibility determinations or weigh the evidence."[17]  Under Federal Rule of

---

[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[11] *Celotex*, 477 U.S. at 324.

[12] *Matsushita*, 475 U.S. at 586.

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[14] *Id*. at 251-52 (1989).

[15] *Celotex*, 477 U.S. at 322.

[16] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[17] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[18]

## ANALYSIS

**I.      Converting Defendants' Motion to Dismiss to a Motion for Summary Judgment**

Defendants have moved to dismiss Plaintiff's claims against them pursuant to Rule 12(b)(6) because the allegations as pled fail to state any claim as a matter of law.  In the alternative, Defendants seek summary judgment as to other claims pursuant to Rule 56, particularly Plaintiff's § 1983 claims against the deputies in their individual capacities.  Fed. R. Civ. P. 12(d) provides

> If, on a motion under Rule 12(b)(6). . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.[19]

The Sixth Circuit has described a trial court's decision to convert *sua sponte* a Rule 12 motion to one for summary judgment as "serious error."[20]

Under the circumstances, the Court holds that it is unnecessary to convert the Motion or give the parties notice that the Court will consider the Motion pursuant to Rule 56.  Defendants moved for summary judgment in the alternative and attached affidavits and other evidence to the Motion.[21]  Plaintiff responded in opposition to the Motion by attaching affidavits and other

---

[18] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322.

[19] Fed. R. Civ. P. 12(d).

[20] *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001).

[21] *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004).

evidence as well as filing a motion for discovery pursuant to Rule 56(f).[22]  Therefore, the Court finds that both parties had notice that Defendants' Motion might be treated as one for summary judgment.

Furthermore, the Court need not consider all of the arguments raised in Defendants' Motion under Rule 56.   Defendants argue that Plaintiff has failed to state some of his claims as a matter of law, for example, Plaintiff's § 1983 claims against county employees in their official capacities and his GTLA claims.  With respect to those claims, the Court's analysis is limited to the well-pled allegations of the Complaint itself. [23]  Defendants have attacked other claims by attaching affidavits and arguing that Plaintiff cannot adduce evidence to make out a prima facie case as to those claims.  Defendants contend that they are entitled to summary judgment as to those claims, for example, Plaintiff's § 1983 claims against the deputies in their individual capacities.  With respect to these claims, the Court must analyze them pursuant to Rule 56 because both parties have produced evidence outside of the pleadings.  For these reasons, the Court will consider some of Plaintiff's claims pursuant to Rule 12(b)(6) and others under a Rule 56 standard.

## II.    Plaintiff's First Motion for Extension

In response to Defendants' Motion, Plaintiff filed two separate motions for extension on March 11, 2010.  The first motion (D.E. # 12), styled "Unopposed Motion for Time to Respond

---

[22] *Id.*

[23] *See also Porter v. City of Dyersburg, Tenn.*, No. 07-2638, 2008 WL 2222693, at *2 n.1 (Apr. 2, 2008).

to Defendant's Motion to Dismiss," stated that Plaintiff sought additional time to respond to Defendants' Motion and certified that counsel had consulted and that Defendants did not oppose the relief.  Plaintiff requested to have until April 19, 2010, in which to file a response.   In fact, Plaintiff responded on March 19, 2010.  Therefore, Plaintiff's first motion for extension is granted.

## III.    Plaintiff's Second Motion for Extension Pursuant to Rule 56(f)

Plaintiff filed a second motion for extension (D.E. # 13), styled "Unopposed Motion for Time to Respond to Defendant's Motion for Summary Judgment Pursuant to Rule 56(f)." Plaintiff asked for an extension of time to conduct discovery and to respond to Defendants' Motion on or before February 23, 2011, more than one year after the Motion was filed.  In his Rule 56(f) motion, Plaintiff stated that he needed the additional time "to obtain discovery in the form of testimony and documentary discovery to determine the existence of genuine issues of material fact regarding his Section 1983 claims and his state law claims."  Plaintiff further certified that Defendants did not oppose the extension until 2011.

Defendants responded in opposition to Plaintiff's second motion and disputed Plaintiff's assertion that the parties had conferred about an extension of more than one year.  Defendants argue that Plaintiff has failed to comply with the requirements of Rule 56(f), specifically the formal affidavit setting forth the material facts he hopes to learn through discovery.  Defendants also contend that they should not be not subject to discovery until the Court rules on the issue of qualified immunity.

The Supreme Court has observed that "limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified

immunity."[24]  Indeed, a non-moving party generally must receive "a full opportunity to conduct

discovery" in order to respond to any motion for summary judgment.[25]  To that end Rule 56(f)

provides that the court may "order a continuance to enable affidavits to be obtained, depositions

to be taken, or other discovery to be undertaken."[26]  In order to invoke Rule 56(f), however, the

party opposing the motion for summary judgment must show "by affidavit that, for specified

reasons, it cannot present facts essential to justify its opposition."[27]  The Sixth Circuit has ruled

that the filing of an affidavit and/or motion pursuant to Fed. R. Civ. P. 56(f) is a necessary

prerequisite to granting extensions of time for the purpose of obtaining additional discovery to

respond to a motion for summary judgment.[28]  Rule 56(f) also requires that "a party making such

a filing indicate to the district court its need for discovery, what material facts it hopes to

---

[24] *Crawford-El v. Britton*, 523 U.S. 574, 598 n. 14, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).  *See also Marshall v. Decatur County General Hosp.*, No. 08-1159, 2009 WL 3757712, at *1 (W.D.Tenn. Jan. 30, 2009) (permitting limited, "narrowly tailored" discovery on issue of qualified immunity where the plaintiff and the defendant maintained differing versions of the underlying incident).

[25] *Ball*, 385 F.3d at 719-20.  *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 257; *Celotex Corp. v. Catrett,* 477 U.S. at 322 ("the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *White's Landing Fisheries, Inc. v. Buchholzer,* 29 F.3d 229, 231-32 (6th Cir.1994) ("[in light of *Anderson* and *Celotex,*] a grant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery").

[26] Fed. R. Civ. P. 56(f)(2).

[27] Fed. R. Civ. P. 56(f).

[28] *Plott v. Gen. Motors Corp.,* 71 F.3d 1190, 1196 (6th Cir. 1995).

11

uncover, and why it has not previously discovered the information."[29]  The Sixth Circuit has held

that it is not an abuse of discretion for the district court to deny the Rule 56(f) request when the

party "makes only general and conclusory statements [in its affidavit] regarding the need for

more discovery and does not show how an extension of time would have allowed information

related to the truth or falsity of the [claim] to be discovered."[30]  In § 1983 cases, a party must

show that the discovery needed is "tailored specifically" to the issue of qualified immunity.[31]

The Court holds that Plaintiff's Rule 56(f) motion fails to state with specificity what

information Plaintiff needs to respond to Defendants' Motion.  Plaintiff simply seeks discovery

on his "Section 1983 claims and his state law claims."  The Court finds that Plaintiff's

description of the discovery needed is so general and conclusory that it encompasses all of the

discovery to be had in this case.  This conclusion is not only based on the vagueness of

Plaintiff's motion but also because Plaintiff has sought an extension to respond of more than one

year, that is, until all discovery deadlines in the case have passed.  Otherwise, Plaintiff has not

set forth what specific facts he needs to respond to Defendants' Motion for Summary Judgment,

particularly Defendants' arguments against the § 1983 claims.  Defendants have argued that the

deputies are entitled to qualified immunity for all claims against them in their individual

capacities.  The deputies have provided affidavits about their encounter with Plaintiff, to which

---

[29] *Cacevic v. City of Hazel Park,* 226 F.3d 483, 488 (6th Cir. 2000).  *See also CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008).

[30] *Ironside v. Simi Valley Hosp.,* 188 F.3d 350, 354 (6th Cir. 1999).  *See also Emmons v. McLaughlin,* 874 F.2d 351, 357 (6th Cir.1989) (not an abuse of discretion to reject a Rule 56(f) affidavit as insufficient to support further discovery when the affidavit lacks "any details" or "specificity").

[31] *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Plaintiff has responded with his own affidavit and the affidavit of another witness.  Plaintiff has failed to show what additional facts he needs to respond to the deputies' accounts about what actions they took and why they took them.[32]  Defendants have also sought summary judgment in favor of Shelby County on Plaintiff's § 1983 claim for the County's failure to train and supervise the deputies.  The County has provided copies of its policies and training on the use of force as well as an affidavit of the Chief Deputy explaining county procedures.  Plaintiff has failed to explain what additional facts he hopes to discover to create a genuine issue that the County's policies were the moving force behind his alleged injuries.  Because Plaintiff does not set forth what specific facts he needs to respond to Defendants' arguments on these issues, Plaintiff's motion for extension pursuant to Rule 56(f) is denied.

## IV.    Defendants' Motion to Dismiss Certain Claims Under Rule 12(b)(6)

### A. Official Capacity Claims Against All Defendants

Plaintiff has alleged that the acts of Sheriff Luttrell, Deputy Beans, and Deputy Sturgeon were undertaken in their official capacities as employees of Shelby County.  Defendants argue that such official capacity claims are essentially claims against Shelby County.  The Court agrees.  "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."[33]

When government employees like Sheriff Luttrell, Deputy Beans, and Deputy Sturgeon are sued

---

[32] *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003) (reversing and remanding where district court granted Rule 56(f) motion where moving party did not submit affidavit and court simply granted motion without considering the record that was available).

[33] *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

in their official capacities, the action "is equivalent to a suit against" Shelby County.[34]
Therefore, all claims against Sheriff Luttrell, Deputy Beans, and Deputy Sturgeon in their
official capacities with the Shelby County Sheriffs Department are dismissed pursuant to Rule
12(b)(6).

### B. Sheriff Luttrell in his Individual Capacity

Plaintiff has alleged that Sheriff Luttrell failed in his individual capacity to properly train,
hire, supervise, or retain the deputies.[35]  However, the Complaint fails to specify any personal act
of Sheriff Luttrell that led to the deputies' alleged violation of Plaintiff's constitutional rights.
"Because § 1983 liability cannot be imposed under a theory of *respondeat superior,* proof of
personal involvement is required for a supervisor to incur personal liability."[36]  Personal
involvement amounts to "the supervisor encourag[ing] the specific incident of misconduct or in
some other way directly participat[ing] in it" that is, the "supervisory official at least implicitly
authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending
subordinate."[37]  Plaintiff has failed to make such an allegation against Sheriff Luttrell in the case
at bar.  Therefore, Plaintiff's claim against Sheriff Luttrell in his individual capacity is also
dismissed under Rule 12(b)(6).

### C. GTLA Claims Against All Defendants

---

[34] *Knott v. Sullivan*, 418 F.3d 561, 574-75 (6th Cir. 2005).

[35] Compl. ¶ 3.

[36] *Miller v. Calhoun County,* 408 F.3d 803, 817 n. 3 (6th Cir. 2005).

[37] *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984).

Plaintiff has alleged a series of causes of action sounding in tort under the GTLA including a claim for negligence against Shelby County and claims for negligence and assault against Deputy Beans and Deputy Sturgeon.  State law claims against governmental entities and their employees are governed by the GTLA.[38]  Ordinarily, state law claims would give this Court supplemental jurisdiction because they arise out of the same facts and form part of the same case or controversy.[39]  However, GTLA claims must be brought in "strict compliance" with the terms of the state statute.[40]  The GTLA confers on the state circuit courts exclusive original jurisdiction over claims brought pursuant to its provisions.[41]

A federal district court may, in its discretion, decline supplemental jurisdiction over a state law claim, even if jurisdiction would otherwise be proper under § 1367(a).  Section 1367(c)(4) allows a district court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."[42]  The Sixth Circuit has affirmed the dismissal of GTLA claims, because "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts.  This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction."[43]  Therefore, the Court declines to accept jurisdiction

---

[38] *See* Tenn.Code Ann. § 29-20-101, *et seq.*

[39] *See* 28 U.S.C. § 1367(a).

[40] Tenn.Code Ann. § 29-20-201(c).

[41] Tenn.Code Ann. § 29-20-307.

[42] 28 U.S.C. § 1367(c)(4).

[43] *Gregory v. Shelby County, Tennessee*, 220 F.3d 433, 446 (6th Cir. 2000).  *See also Maxwell v. Conn*, 893 F.2d 1335 (6th Cir. 1990) (stating that the GTLA's grant of exclusive

over Plaintiff's claims brought pursuant to the GTLA in accordance with 28 U.S.C. § 1367(c)(4).[44]  Because the Court declines to accept jurisdiction over these state claims, they are dismissed without prejudice

### D.  Claims Against Defendant Shelby County

#### 1. Respondeat Superior

Although it never uses the phrase "respondeat superior," Plaintiff's Complaint makes reference to Defendant Shelby County's liability for the acts of its employees, Sheriff Luttrell, Deputy Beans, and Deputy Sturgeon.[45]  The Court has already dismissed all GTLA claims against Shelby County.  Likewise, a local government entity like Shelby County "cannot be held liable under § 1983 on a *respondeat superior* theory."[46]  Therefore, any claim against Shelby County based strictly on the acts of any Shelby County employee must be dismissed as a matter of law.  Therefore, Defendants' Motion is granted as to these claims.

#### 2. Punitive Damages under § 1983

Defendants have argued that any claims for an award of punitive damages against Shelby County should be dismissed.   It is not clear to the Court that Plaintiff's Complaint seeks such an

---

jurisdiction to the state courts "belie[d]" plaintiff's argument that he could expect to try the GTLA claims in the same proceeding as his federal claims)).

[44] *See Conner v. City of Jackson, Tenn.*, 669 F. Supp. 2d 886, 892-93 (W.D. Tenn. 2009).

[45] Compl. ¶¶  2, 7.

[46] *Knott*, 418 F.3d at 574-75 (citing *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

award.  Nor has Plaintiff briefed the issue in his response to Defendants' Motion.  Nevertheless, it is well-settled that a municipality or county government is "immune from punitive damages under 42 U.S.C. § 1983."[47]  Therefore, Plaintiff is barred as a matter of law from seeking punitive damages against Shelby County, and Defendants' Motion is granted as to this claim.

## V.     Defendants' Motion for Summary Judgment

Having ruled on certain claims as a matter of law, the Court now turns to the remaining claims against Defendants: § 1983 claims for the use of unreasonable force against Deputy Beans and Deputy Sturgeon in their individual capacities; and § 1983 claims for failure to train or supervise against Shelby County.  Because the parties have provided evidence outside of the pleadings, the Court will analyze each claim pursuant to Rule 56 standards.

### A.     Unreasonable Force Claims Against the Deputies

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."[48]  In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state

---

[47] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  The Sixth Circuit has consistently followed the holding in *City of Newport*.  For instance, in *Barnier v. Szentmiklosi*, the Court relied upon the holding in *City of Newport* to assert that a plaintiff was not entitled to receive punitive damages from a municipality in § 1983 case.  810 F.2d 594, 598-99 (1987).

[48] 42 U.S.C. § 1983.

law."[49]  "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred."[50]

Government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights.[51]  In other words, a "defendant enjoys qualified immunity on summary judgment unless the facts alleged and evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established."[52]  The defense of qualified immunity "ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were [ ]lawful."[53]  When qualified immunity is asserted, the plaintiff bears the burden of showing that the defendants are not entitled to that defense.[54]  Specifically, the plaintiff "must show both that, viewing the evidence in the light most favorable to her, a constitutional right was violated and that the right was clearly established at the time of the violation."[55]

---

[49] *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[50] *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

[51] *Hills v. Kentucky*, 457 F.3d 583, 587 (6th Cir. 2006).

[52] *Jefferson v. Lewis*, 594 F.3d 454, 459-60 (6th Cir. 2010) (citations omitted).

[53] *Chappell v. City of Cleveland,* 585 F.3d 901, 907 (6th Cir. 2009) (citing *Pearson v. Callahan,* 129 S.Ct. 808, 815 (2009)).

[54] *Chappell*, 585 F.3d at 907.

[55] *Id*.

The Supreme Court has explained, "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat of force thereof to effect it."[56] "All claims that law enforcement officers have used excessive force-deadly or not ... should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[57] The Court must apply "the objective reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight."[58] Such factors include (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight."[59] "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation."[60] Further, the Court conducts the reasonableness inquiry objectively, based on the "information possessed" by the officer, without regard to the officer's subjective beliefs and without regard to facts not known by the officer at the time of the incident.[61]

---

[56] *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

[57] *Floyd v. City of Detroit,* 518 F.3d 398, 405 (6th Cir. 2008) (*Graham,* 490 U.S. at 395).

[58] *Jefferson*, 594 F.3d at 461 (citations omitted).

[59] *Graham,* 490 U.S. at 396.

[60] *Id.* at 396-97.

[61] *Anderson v. Creighton,* 483 U.S. at 641.

19

The Court holds that Deputy Beans and Deputy Sturgeon are entitled to qualified immunity from Plaintiff's § 1983 claims because Plaintiff cannot show that the deputies violated his Fourth Amendment right to be free from the use of unreasonable force.  According to his brief, Plaintiff bases his excessive force claim on the following theories: (1) that he has a constitutional "right to be free from baton strikes when he was not resisting Beans and Sturgeon or in a state of seizure;" (2) that he has "the right to be free from chemical spray in his eyes, having his head rammed into the wall, and having a knee placed in his back while handcuffed."

Based on the record before the Court, Plaintiff cannot make any of these showings.  Each deputy has submitted an affidavit in support of the Motion for Summary Judgment stating their version of events.  Plaintiff has submitted his own affidavit as well as the affidavit of Aisha Swatt, the woman who placed the 911 call on the night in question.  Viewing this evidence in a light most favorable to Plaintiff, Plaintiff cannot establish that the deputies violated his constitutional rights.  When assessing the reasonableness of a law enforcement officer's actions, the Court must analyze the seizure or arrest in segments.[62]  Therefore, the Court will consider each of Plaintiff's allegations of excessive force as they occurred on the morning of December 20, 2008.

### 1. Use of Pepper Spray

First, the Court finds that the use of pepper spray was objectively reasonable under the circumstances.  The deputies' affidavits state that pepper spray was used on Plaintiff while he was standing on a bed at his residence and swinging a plastic bag containing unknown items at

---

[62] *Morrison v. Board Of Trustees Of Green Tp.*, 583 F.3d 394, 401 (6th Cir. 2009).

the deputies.[63]  This was after the deputies had heard shouting coming from the room where

Plaintiff and Swatt were, alerted Plaintiff and Swatt to their presence, identified themselves as

sheriffs deputies, and entered the bedroom.[64]  Dispatch had notified the deputies that a man at

Plaintiff's residence had struck his head and needed medical assistance.[65]  Dispatch had also

indicated that there was a history of domestic violence calls from the address.[66]  Both deputies

observed Plaintiff's head bleeding.[67]  Both deputies state that Swatt was telling Plaintiff that the

deputies were there to help him.[68]  The deputies also state that Swatt was pregnant and they

repeatedly ordered her to leave the room.[69]  Nevertheless, Plaintiff swung a stereo speaker at the

deputies, threw that at them, and then jumped onto the bed.[70]  The deputies reported in their use

of force form that Plaintiff shouted at them, "I'll fuck you up."[71]  It was at this point that one of

the deputies used pepper spray.

        Nothing in the evidence adduced by Plaintiff contests any of these facts.  Plaintiff

declares in his own affidavit that on the night in question, he regained consciousness in the

_____

[63] Beans Aff. 3; Sturgeon Aff. 3.

[64] Beans Aff. 2; Sturgeon Aff. 2.

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at 3.

[69] *Id.*

[70] *Id.*

[71] Use of Force Form, ex. 5 to Pl.'s Resp.

21

bedroom where he found the deputies in the room and himself in handcuffs.[72]  Plaintiff goes on to state that one of the deputies pushed his head into the wall or floor while he was handcuffed and that his eyes were burning from being sprayed with pepper spray.[73]  Ms. Swatt's affidavit states only that she could smell mace or pepper spray and that she observed chemical stains on the wall.[74]  Swatt also avers that she called 911 that night to seek medical assistance for Plaintiff because Swatt had found him in a bathroom with a gash over his right eye.[75]  Swatt helped Plaintiff to the bed and then answered the deputies' knock at the door.[76]  Swatt stated that when the deputies came into the room, Plaintiff became alarmed.[77]  According to Swatt, the deputies rushed in and began to chase Plaintiff around the room.[78]  Before the deputies made Swatt leave the room, she told the deputies that Plaintiff "did not know who he was."[79]  Plaintiff has not provided any other information about his version of the events of December 20, 2008.  As a result, Plaintiff has failed to adduce any evidence to contradict the deputies' statements about the circumstances in which the deputies used pepper spray.

The Court holds that the use of pepper spray under these facts did not violate Plaintiff's

---

[72] Smith Aff. ¶¶ 2, 3.

[73] *Id.* ¶¶ 4, 5.

[74] Swatt Aff. ¶¶ 6, 7.

[75] *Id.* ¶ 2.

[76] *Id.* ¶ 3.

[77] *Id.* ¶ 4.

[78] *Id.*

[79] *Id.*

constitutional rights.  The evidence shows that the officers were responding to a call for medical assistance and upon arrival they observed Plaintiff with an obvious need for medical attention, i.e. his head was bleeding.  It is further undisputed that the officers had information about the history of domestic violence calls from Plaintiff's address and that officers heard shouting from the room where Plaintiff and Swatt were  It is also undisputed that Plaintiff went into an agitated state: Plaintiff ran from the deputies and "did not know who he was." Swatt has not challenged the deputies' statements that Plaintiff began to swing objects at the deputies and made a verbal threat against them.

Applying these facts to the *Graham v. Connor* factors, the use of the pepper spray was objectively reasonable under the circumstances.  Viewing this evidence in the light most favorable to Plaintiff, it cannot be said that there was probable cause to believe that Plaintiff had committed a crime.  The parties dispute whether the deputies ever observed Plaintiff holding Swatt in a headlock.  As a result, the Court finds that the severity of the crime factor is not relevant for purposes of this Motion.  Nevertheless, Plaintiff did pose an immediate threat to himself and others present and actively resisted the deputies' attempts to control him.  The undisputed evidence shows that Plaintiff was swinging objects in the room at the deputies and shouted a threat at them.  The Sixth Circuit has held that the use of pepper spray is reasonable where officers use it in order to gain compliance from a person who they believe needs medical attention and may pose a risk of harm to himself.[80]  In that case, the Sixth Circuit concluded that "[a]lthough [the arresting officer] did not suspect Plaintiff of having committed a crime, he had

---

[80] *Monday v. Oullette*, 118 F. 3d 1099, 1104 (6th Cir. 1997).

reason to believe that the potential consequences of inaction would be serious."[81]  Likewise, the Court finds that the deputies acted reasonably in using spray to gain compliance over Plaintiff because they had reason to believe that Plaintiff was a danger to himself, to the then-pregnant Swatt, to the paramedics there to treat Plaintiff's cut, and to the deputies themselves.

Additionally, Plaintiff was resisting the deputies' efforts to gain control.  The deputies stated that Plaintiff was in such a state that it was not safe for Swatt or the paramedics to enter the room until Plaintiff was restrained.  According to Deputy Beans, during his struggle with Plaintiff, the deputy was also concerned that Plaintiff was attempting to get control of the deputy's firearm.[82]  Under these facts, it was not unreasonable for the deputies to use pepper spray to disable Plaintiff.  The cases Plaintiff has cited in support concerning the use of pepper spray are clearly distinguishable, primarily because Plaintiff was not in handcuffs when the deputies deployed pepper spray.[83]  Therefore, the use of pepper spray did not violate Plaintiff's rights, and Defendants are entitled to qualified immunity on this claim.

### 2.Baton Strikes

The second basis for Plaintiff's claim of unreasonable force is the deputies' alleged use

---

[81] *Id.*  Because the deputies in the case at bar need not have probable cause to believe that Plaintiff had committed a crime, it is immaterial whether Plaintiff was actually holding Swatt in a headlock when the deputies made contact with them.  Although the Court finds that this fact is disputed, it does not alter the Court's conclusion that the deputies acted reasonably to gain Plaintiff's compliance for his own safety as well as the safety of Ms. Swatt who was pregnant at the time, the deputies themselves, and the paramedics responding to the 911 call.

[82] Beans Aff. 3.

[83] *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004) (use of pepper spray on autistic arrestee excessive where officers continued to spray after arrestee was in handcuffs); *Jones v. City of Cincinnati*, 521 F.3d 555 (6th Cir. 2008) (use of 33 baton strikes, chemical spray after arrestee in handcuffs, use of combined weight to hold arrestee down, all of which resulted in death of arrestee, excessive).

of batons to gain Plaintiff's compliance.  The deputies have averred that neither of them used their batons to strike Plaintiff during the struggle.[84]  After one of the deputies used the pepper spray, Plaintiff jumped from the bed toward Deputy Sturgeon.[85]  At that point Deputy Beans grabbed the Plaintiff and the two men tumbled to the floor.[86]  Deputy Sturgeon was able to get one of Plaintiff's hands cuffed, but Plaintiff continued to struggle and kick at the deputies.[87]  It took the efforts of several deputies to get Plaintiff's other hand cuffed.[88]  Both deputies have stated that they learned that a third deputy, not named in this suit, struck Plaintiff twice on the leg with a baton to prevent him from kicking the deputies.[89]

As previously noted, Plaintiff's affidavit about his struggle is noticeably lacking in any detail.  However, Ms. Swatt's affidavit indicates that after the deputies ordered her to leave the room, she heard "one or both deputies pull out their nightsticks or billy clubs and hit someone" whom Swatt believed to be Plaintiff.[90]  Plaintiff has also cited for support the medical records from his subsequent treatment at the Med.

The Court holds that Plaintiff has failed to adduce evidence that either Deputy Beans or Deputy Sturgeon used a baton against him.  It is undisputed that a baton was used against

---

[84] Beans Aff. ¶ 7; Sturgeon Aff. ¶ 7.

[85] *Id.* at 3.

[86] *Id.*

[87] *Id.*

[88] *Id.*

[89] *Id.* ¶ 9

[90] Swatt Aff. ¶ 5.

Plaintiff at some point while deputies attempted to restrain him.  Both deputies have stated that a third deputy used a baton on Plaintiff's leg at a time when Plaintiff was kicking the deputies.  The use of force report identified the third deputy as Deputy McNinch.[91]  While admitting that she was not in the room, Ms. Swatt has stated only that she heard what sounded like someone hitting another person with a nightstick.  In fact, the affidavits of Swatt and Plaintiff are silent about who actually struck Plaintiff with a baton, and neither refers to the presence of Deputy McNinch.  Based on this record, Plaintiff has failed to adduce any evidence that Deputy Beans or Deputy Sturgeon actually struck him with a baton.  The Court also observes that Plaintiff's admission record from the Med stated the following under the "Description" section: "struck about the head with nightstick."[92]  Plaintiff has failed to show whether this was an actual diagnosis or simply his own report of what happened.  The Court finds that it is the only place in the record, including Plaintiff's Complaint and his affidavit, where there is any suggestion that Plaintiff was struck in the head with a baton.  Without some further showing, Plaintiff has failed to prove that Deputy Beans or Deputy Sturgeon struck him with a baton.  Therefore, these Defendants are entitled to qualified immunity as to this claim.

Even if the Court inferred from Swatt's limited testimony that Deputy Beans and/or Deputy Sturgeon used a baton against Plaintiff, the Court holds that this level of force was objectively reasonable under the circumstances.  First and foremost, it is undisputed that the only baton strikes Plaintiff suffered were on one or both legs.  Plaintiff has presented no evidence

---

[91] Use of Force Form, ex. 5 to Pl.'s Resp.  The Court notes that Plaintiff filed a motion to amend his complaint to name Micah McNinch as a defendant in this action (D.E. # 15) on March 19, 2010.

[92] Pl.'s Med records, ex. 2 to Pl.'s Resp., Mar. 19, 2010.

about who struck him, where he was struck, how many times he was struck, and when he was struck.  Therefore, the cases involving baton strikes Plaintiff has cited for support are inapposite. More specifically, these cases addressed the reasonableness of police striking a suspect with batons after subduing or incapacitating the suspect.[93]  Here the only evidence in the record about baton strikes shows that Plaintiff was struck in the legs after he struggled with deputies and kicked them as they handcuffed him and put nylon binders on his legs.  Based on that evidence, Plaintiff was clearly resisting the deputies by continuing to kick, and the baton strike(s) was aimed at his legs.  Therefore, even if the Court drew the inference that a deputy struck Plaintiff with a baton, the Court finds that striking Plaintiff's legs as he resisted by kicking the deputies is objectively reasonable.  Defendants' Motion is granted as to this claim.

### 3.   *Pushing Plaintiff's Head into a Wall and Placing a Knee in His Back*

Plaintiff 's final claim of excessive force is that the deputies pushed his head into the floor or wall and they placed a knee in his back, both after he was handcuffed.  In her affidavit, Ms. Swatt stated that she saw one of the deputies put his knee in Plaintiff's back after Plaintiff was handcuffed.  Plaintiff has also stated in his affidavit that one of the deputies pushed his head into the wall or the floor while he was handcuffed.

It is well-settled in this Circuit that "use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law."[94]  For example, in cases involving police putting a knee in a suspect's back, the Sixth Circuit has held that police used excessive force by kneeling

---

[93] *Champion*, 380 F.3d at 902-03 (collecting cases about use of force including baton strikes after suspect was no longer a threat or resisting); *Jones*, 521 F.3d at 559-60 (suspect struck 33 times with baton during arrest without being given the chance to comply).

[94] *Baker v. City of Hamilton,* 471 F.3d 601, 607-08 (6th Cir. 2006).

on a compliant, handcuffed suspect's neck while a second officer pointed a gun at the suspect's head [95] and in another case that police acted unreasonably by throwing a suspect to the ground and "jumping up and down on [her] back with a knee. . . for around fifteen minutes."[96] Similarly, the Court held that an officer was not entitled to qualified immunity where the suspect was handcuffed and compliant and the officer pushed her face into the ground every time she attempted to speak[97] or that an officer had no justification for slamming an arrestee's head into the floor three times after the arrestee was subdued and another officer was sitting on him.[98]  The common rationale for these decisions is that "once the detainee ceases to pose a threat to the safety of the officers or others, the legitimate government interest in the application of significant force dissipates."[99]  Therefore, the police conduct in these cases involving the use of force against compliant suspects was unreasonable and violated the Fourth Amendment.

At the same time, it is well-settled that law enforcement officers have the authority to use some level of force to effectuate an arrest, or in this case a seizure where the Plaintiff had a medical need and was actively resisting the deputies.  One court has observed that the "Sixth Circuit has consistently held that a suspect's resistance justifies the application of minimal force

---

[95] *Alkhateeb v. Charter Township of Waterford*, 190 F. App'x 443, 452-53 (6th Cir. 2006) (pointing gun at head and kneeling on non-resisting suspect's neck after handcuffs applied excessive).

[96] *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006) (no justification for "jumping up and down on [arrestee's] back with a knee. . . for around fifteen minutes").

[97] *Morrison*, 583 F.3d 407-08.

[98] *Phelps v. Coy*,  286 F.3d 295 (6th Cir. 2002).

[99] *Morrison*, 583 F.3d at 404-05.

to subdue and handcuff him."[100]  For example, the Sixth Circuit concluded that the act of placing a knee in a suspect's back followed by the use of a wrist lock was not objectively unreasonable where the officer "reasonably concluded" that the suspect was resisting arrest.[101]

The Court holds that Plaintiff has failed to show that the deputies' alleged conduct rises to the level of a constitutional violation because Plaintiff was actively resisting the deputies even after being handcuffed.  As an initial matter, Plaintiff has not alleged the type of outrageous police misconduct or deadly injuries alleged in other cases involving police putting a knee in a suspect's back or pushing the suspect's face into the floor or wall.  More importantly, although Plaintiff has adduced evidence that the deputies applied force after he was handcuffed, Plaintiff has not disputed that he resisted the deputies and continued to resist even after he was pepper sprayed and in handcuffs.  The record shows that while Plaintiff struggled with Deputy Beans, Deputy Sturgeon was able to get only one of Plaintiff's hands cuffed.  Both deputies have also stated that it took the effort of three deputies to finally cuff the other hand.  Even after Plaintiff was in handcuffs, then Plaintiff kept on kicking the deputies, and the struggle to restrain Plaintiff continued.  It was only after the deputies bound Plaintiff's feet that Plaintiff stopped resisting.

Notably, Plaintiff does not indicate whether a deputy pushed his face into the floor or wall when Plaintiff was actively struggling with the deputies or after the deputies bound his feet and finally subdued him.  Nor does Ms. Swatt indicate whether a deputy placed a knee in Plaintiff's back during the struggle or after deputies had restrained Plaintiff.  Nevertheless,

---

[100] *Ashbrook v. Boudinot*, No. C2-06-140, 2007 WL 4270658, at *6 (S.D. Ohio Dec. 3, 2007) (describing the "legion" of cases in this Circuit where officers were justified in using minimal force to gain control over resisting suspects) (citations omitted).

[101] *Lee v. Hefner*, 136 F. App'x 807, 812-13 (6th Cir. 2005).

assuming that a deputy did put a knee in Plaintiff's back and another deputy pushed his face into the floor, as the Court must for purposes of this Motion, other evidence in the record suggests that the deputies did so during the struggle and not at a time after Plaintiff was restrained and no longer resisting. Both Deputy Beans and Deputy Sturgeon have averred that paramedics were allowed to come into Plaintiff's bedroom after Plaintiff's feet were finally immobilized and the struggle was over.[102] At that point, Plaintiff was then put on a stretcher and taken to the ambulance.[103] Therefore, it can be inferred from this evidence that the encounter with the deputies was over as soon as Plaintiff was under control and under the care of the paramedics. Therefore, if a deputy pushed Plaintiff's face into the floor or wall and a deputy placed a knee in Plaintiff's back, the evidence in the record tends to show that these acts occurred at a time when Plaintiff was still forcibly resisting the deputies. The fact that Plaintiff continued to struggle against the deputies even after both of his hands were cuffed makes the facts of this case distinguishable from the other excessive force cases cited above. As a result, Plaintiff has failed to show that the use of force was unreasonable under the circumstances set forth in the record before the Court.

Viewing the evidence in the light most favorable to Plaintiff, the Court holds that Plaintiff has failed to carry his burden to show that a constitutional right was violated and that the right was clearly established at the time of the violation. Therefore, Defendants Beans and Sturgeon are entitled to qualified immunity on Plaintiff's § 1983 claims against them.

---

[102] Beans Aff, 3; Sturgeon Aff. 3.

[103] *Id.*

**B.  Section 1983 Claims Against Shelby County**

The Court holds that Defendant Shelby County is entitled to summary judgment on

Plaintiff's § 1983 claims against it.  Plaintiff has alleged that the policy of Defendant Shelby

County was the moving force behind the deprivation of his constitutional rights.  However, the

Court has concluded that the acts of Defendants Beans and Sturgeon did not violate Plaintiff's

right to be free from unreasonable force.  Absent proof that an arrest or seizure violated a

plaintiff's federal constitutional rights, there can be no municipal liability under *Monell v.*

*Department of Social Services of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611

(1978).[104]  Therefore, Defendants' Motion is granted as to Defendant Shelby County.

**CONCLUSION**

Plaintiff's claims against Sheriff Luttrell, Deputy Beans, and Deputy Sturgeon in their

official capacities and against Sheriff Luttrell in his individual capacity are dismissed for failure

to state a claim pursuant to Rule 12(b)(6).  Likewise, Plaintiff's tort claims under the GTLA and

claims against Defendant Shelby County for respondeat superior and for punitive damages are

dismissed under Rule 12(b)(6).

---

[104] *Wilson v. Morgan*, 477 F.3d 326, 344 (6th Cir. 2007). *See also Jones v. Reynolds*, 438 F.3d 685 (6th Cir. 2006) ("Accordingly, whether it was the policy of the department not to stop drag races occurring in Detroit (as Jones claims) or whether state law prevented the department's intervention (as the City claims) makes no difference to the outcome of this dispute.  That the officers did not violate Denise Jones' constitutional rights eliminates any potential derivative liability of the City.").

Defendant Deputy Beans and Deputy Sturgeon are entitled to qualified immunity on Plaintiff's § 1983 because Plaintiff has failed to show that the deputies used an unreasonable amount of force against plaintiff.  Consequently, Shelby County is entitled to summary judgment on Plaintiff's § 1983 claims for failure to train or supervise.  Therefore, Defendants' Motion is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 14th, 2010.